UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re FAIRPOINT COMMUNICATIONS, INC., *et al.*,

                     Reorganized Debtors.

TRC OPTIMUM FUND LLC and GLACIAL ENERGY OF NEW ENGLAND, INC.,

                     Appellants,

v.

FAIRPOINT COMMUNICATIONS, INC., *et al.*,

                     Appellees.

12 Civ. 3032

**OPINION**

---

This is a motion to dismiss an appeal from a ruling by the bankruptcy court presiding over the Chapter 11 reorganization of FairPoint Communications, Inc. Appellant Glacial Energy of New England, Inc. argues that the bankruptcy court improperly expunged its claim for $580,986.08 against FairPoint. Glacial's co-appellant, TRC Optimum Fund LLC, is a claim trading firm that purchased Glacial's claim during the pendency of the bankruptcy but whose purchase Glacial and TRC have since sought to unwind.

The appeal is dismissed.

**Factual Background**

On March 5, 2010, Glacial filed a Proof of Claim in the ongoing Chapter 11 bankruptcy proceedings against Northern New England Telephone Operations, LLC, a

1

company affiliated with FairPoint and which, among other FairPoint affiliates, was to be reorganized in the FairPoint bankruptcy.[1]  Glacial claimed, and FairPoint appears to have acknowledged, that FairPoint owed Glacial approximately $580,000 under a contract between them.  The bankruptcy court referred to this as "claim 3515" — this court will refer to it as "the Glacial claim" though, at certain points, it was actually held by TRC.  On April 21, 2010, Glacial sold its claim to TRC and TRC filed the required notice of transfer with the bankruptcy court.

FairPoint eventually prepared a proposed reorganization plan.  Such a plan can include specifying certain claims which need to be "cured," meaning paid or otherwise disposed of.  In the case of a claim which is to be paid in whole or in part, the plan will specify the amount of the payment due.  In the reorganization plan, as proposed by FairPoint, the Glacial claim was not listed as one which needed to be cured.

Hearings were held to confirm the proposed plan.  Neither TRC nor Glacial made any objection to the proposed plan. Glacial claims that it did not object because it did not receive notice of the plan.  But TRC was then the registered owner of the claim, and it appears that notice of the proposed plan was sent to TRC.

In the absence of any objection, the bankruptcy court confirmed FairPoint's plan on January 13, 2011.  The plan, as thus confirmed, did refer to the Glacial claim and stated that the cure amount was $0.00.

---

[1] For the sake of simplicity, the court will follow the parties' lead and refer to both FairPoint Communications, Inc. itself and its reorganized affiliates as "FairPoint."

It is apparently the practice of a bankruptcy court, at least at times, to establish a date after which no transfer of claims would be permitted. The confirmation order in the FairPoint bankruptcy established such a date as January 14, 2011. Of course, the transfer of the Glacial claim to TRC had occurred well before that date. But an issue arose later as to the possible transfer back from TRC to Glacial subsequent to that date.

Six months later, on June 28, 2011, FairPoint filed one of a series of objections to claims. The one filed on this date sought to expunge Glacial's claim, among many others. FairPoint contended that it had cured its default on the Glacial contract by "paying" the $0.00 cure amount. TRC and Glacial "objected" to this objection but, at a hearing on January 26, 2012, the bankruptcy court issued a bench ruling sustaining the FairPoint objection. This is the order appellants seek to vacate through this appeal.

Meanwhile, as FairPoint's bid to expunge the Glacial claim was pending before the bankruptcy court, TRC sued Glacial in New York state court seeking to recoup what it had paid for this apparently worthless claim. <u>TRC Optimum Fund LLC v. Glacial Energy, Inc.</u>, Index No. 652249/2011 (N.Y. Sup. Ct.). In March of 2012, the state court entered a consent judgment in TRC's favor and ordered Glacial to pay TRC $672,261.84 plus post-judgment interest of $136.76 per day. In their agreement resolving that dispute, TRC also agreed to transfer the claim back to Glacial. Glacial represents that it is in the process of satisfying TRC's judgment against it.

On April 12, 2012, TRC filed a notice with the bankruptcy court purporting to transfer the claim back to Glacial. But the bankruptcy court rejected TRC's notice of transfer

3

because the transfer was attempted long after the transfer deadline set in the bankruptcy court's confirmation order.

Therefore, after all these maneuverings, the appellants' situation is this. The problem with Glacial's position in the case as it stands is that it transferred its claim to TRC. It is true that TRC purported to transfer the claim back to Glacial. However, the bankruptcy court has rejected such attempt to transfer back, and neither Glacial nor TRC are appealing the latter ruling. Thus, on the present record, Glacial holds no claim against FairPoint.

## Discussion

This court has the power to entertain appeals from bankruptcy proceedings only by aggrieved parties who suffer direct pecuniary effects of the bankruptcy. Kane v. Johns-Manville Corp., 843 F.2d 636, 641 (2d Cir. 1988). This standard is considerably more stringent than the constitutional "case or controversy" test that requires only an "injury in fact" that is "fairly traceable" to the conduct at issue. See id. at n.2.

It follows from this test that neither appellants have standing to bring this appeal. TRC has already fully recovered in the form of a judgment against Glacial. Therefore TRC is not "aggrieved." And Glacial is not the holder of the claim at issue. It thus has no "direct pecuniary interest" in the outcome of the appeal.

Therefore, the appeal is dismissed.

So ordered.

Dated: New York, New York
March 25, 2013

_____
Thomas P. Griesa
United States District Judge

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 25, 2013
```